UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60276-CIV-ALTMAN/Hunt

**JEAN FRANTZ GUILLAUME**,

    *Plaintiff*,

v.

**KENNETH M. HYDE**, *et al.*,

    *Defendants*.

_____/

## ORDER GRANTING MOTION TO DISMISS

The Defendants filed a Motion to Dismiss (the "Motion") [ECF No. 31]. The Plaintiff filed a response (the "Response") [ECF No. 37]. And the Defendants replied (the "Reply") [ECF No. 43]. This Order follows.

### THE FACTS

The Plaintiff, Jean Frantz Guillaume, is a disabled United States Navy Veteran and the owner of "AFILY8 Government Solutions" ("AFILY8"). Compl. at 6, 2. AFILY8 provides—through the United States Department of Veterans Affairs' ("the VA") "Veterans First Contracting Program" ("the Program"[1])—services to veteran-owned small businesses that facilitate those businesses' bids for government contracts. Compl. at 2.

In November 2008, Scott F. Denniston, the VA's Director, first approved AFILY8 for participation in the Program. *See id.* Then, in September 2014, AFILY8—a service-disabled-veteran-owned small business (an "SDVOSB")—applied for (and received) placement on the

---

[1] *See* 38 U.S.C. § 8127(a) (noting that the Program's objective is "to increase contracting opportunities for small business concerns owned and controlled by veterans and small business concerns owned and controlled by veterans with service-connected disabilities").

"Veteran's Administration Vendors List." *Id.* at 6.[2]

Some time later, AFILY8 secured nine government contracts for its clients. *See id.* While AFILY8 was performing on those contracts, Earl Titus—a VA Onsite Examiner from the Premier Company ("Premier")[3]—demanded that AFILY8 provide certain documentation to maintain its status in the Program. *See id.* at 6. After AFILY8 provided the requested documentation, Titus sent Daniel Pearsall (Premier's Senior Director of Government Programs) a report, in which he recommended that AFILY8 be removed from the Vendors List. *See id.* at 6–7. Pearsall "certified" the "report as true and correct" and forwarded it to Tiana Burnett (Premier's Senior Director of Operations). *Id.* Burnett, in turn, forwarded that same report to Marcus E. Board (Premier's CEO), who "reviewed the report and without any independent review of the documentation, certified it as true and correct." *Id.* Board then forwarded the report, along with a recommendation that AFILY8 be removed from the Vendors List, to Thomas McGrath at the VA's Center for Verification and Evaluation. *See id.* at 7–8. McGrath accepted the report and its findings "without conducting an independent review of the facts" and sent it to the United States Department of Small Business Administration (the "SBA"). *Id.* In doing so, McGrath similarly suggested that AFILY8 be removed from the Vendors List. *Id.* Once it received the report from McGrath, the SBA removed AFILY8 from the VA's Vendors List. *See id.*

AFILY8 appealed the removal. *See id.* "[W]ithout conducting an independent review of Plaintiff's documents and supporting facts," the administrative law judge, Kenneth Hyde, denied AFILY8's appeal and affirmed its removal from the Vendors List. *See id.*

---

[2] *See* 38 U.S.C. § 8127(f)(1) ("[T]he Secretary shall maintain a database of small business concerns owned and controlled by veterans, small business concerns owned and controlled by veterans with service-connected disabilities, and the veteran owners of small business concerns.").

[3] Premier is a privately-owned company that provides onsite examinations of VA facilities through a contract with the VA.

2

Guillaume then filed this lawsuit against (i) The VA; (ii) the SBA; (iii) Judge Kenneth Hyde; (iv) Premier; (v) McGrath; (vi) Board; (vii) Burnett; (viii) Pearsall; and (ix) Titus. *See id.* at 1.[4] While Guillaume does not list specific counts, he, at various times, relies on: (i) the Constitutional Right to Contract; (ii) the Due Process Clause; (iii) the statutory right to contract in 38 U.S.C. §§ 101–111; and (iv) the Declaratory Judgment Act. *See id.* at 8–10. For these violations, Guillaume asks for: (i) a declaratory judgment; (ii) punitive damages; and (iii) compensatory damages. *See id.* at 10–13.

The Defendants responded with a Joint Motion to Dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). *See generally* Mot. In their Joint Motion, the Defendants argue that this Court lacks subject-matter jurisdiction over the case, *see id.* at 5, 12–13, 16; that this Court lacks personal jurisdiction over the Premier Defendants, *see id.* at 14–16; that the Federal Defendants are entitled to either judicial immunity or qualified immunity, *see id.* at 5–12; and that the Complaint fails to state a plausible claim for relief, *see id.* at 17–20. On the issue of subject-matter jurisdiction, however, the Defendants advance competing positions. Whereas the Federal Defendants contend only that the Complaint is barred by the doctrine of sovereign immunity, *see id.* at 5, the Premier Defendants say that the Plaintiff lacks standing to bring his claim, *see id.* at 15.

Because this Court lacks subject-matter jurisdiction to hear the case, this Order adjudicates only those portions of the Motion that seek dismissal under FED. R. CIV. P. 12(b)(1).

\*\*\*

AFILY8 has already brought this same claim once before. *See AFILY8 Government*

---

[4] For ease of analysis, the Court will refer to the first three Defendants—the VA, the SBA, and Judge Hyde—as "the Federal Defendants" and the remaining Defendants as "the Premier Defendants."

3

*Solutions, LLC v. United States Government, Office of Hearings and Appeals, SBA*, No. 19-61698-CIV-BLOOM, ECF No. 10 (S.D. Fla. July 29, 2019).[5] In that case, Judge Bloom noted that "Guillaume is attempting to assert the claims in this case on behalf of Afily8 Government Solutions, LLC ("Plaintiff"), an entity of which he is the CEO and agent." *Id.* at 1. But, after making that finding, Judge Bloom *sua sponte* dismissed AFILY8's Complaint because AFILY8 had not retained counsel for its defense. *See id.* at 2.

## THE LAW

### I. *Pro Se* Pleadings

When a plaintiff elects to proceed *pro se*, the Court must interpret his complaint liberally. *See Sause v. Bauer*, 138 S. Ct. 2561, 2563 (2018); *cf. Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Coffield v. Broward Cnty. Jail*, 2017 WL 3600942, at *4 (S.D. Fla. July 21, 2017), *report and recommendation adopted sub nom. Coffield v. Broward Cnty. Main Jail*, 2017 WL 3623677 (S.D. Fla. Aug. 22, 2017). In so doing, however, the Court may not "serve as de facto counsel or [] rewrite an otherwise deficient pleading in order to sustain an action." *Shuler v. Ingram & Assocs.*, 441 F. App'x 712, 716 n.3 (11th Cir. 2011).

### II. Subject-Matter Jurisdiction

A motion to dismiss under Rule 12(b)(1) challenges a federal court's subject-matter jurisdiction over the case. "The requirement that jurisdiction be established as a threshold matter . . . . is 'inflexible and without exception.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)). Indeed,

---

[5] "A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment." *Universal Express, Inc. v. SEC*, 177 F. App'x 52, 53 (11th Cir. 2006) (citation omitted). And public court records "are among the permissible facts that a district court may consider." *Id.* (citations omitted).

even when a party fails to raise the issue of subject-matter jurisdiction, these jurisdictional "delineations must be policed by the courts on their own initiative." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) (citations omitted); *see also* FED. R. CIV. P. 12(h)(3) ("Whenever it appears . . . that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."); *accord Fitzgerald v. Seaboard Sys. R.R., Inc.*, 760 F.2d 1249, 1251 (11th Cir. 1985) ("A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises." (citation omitted)).

One principle of subject-matter jurisdiction is that the "United States is generally immune from suit unless it has expressly waived that immunity by statute." *S. Spanish Trail, LLC v. Globenet Cabos Submarinos Am., Inc.*, 2019 WL 3285533, at *3 (S.D. Fla. July 22, 2019) (citing *Zelaya v. United States*, 781 F.3d 1315, 1322 (11th Cir. 2015)); *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (finding that the doctrine of "[s]overeign immunity is jurisdictional in nature"). Indeed, the "terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood,* 312 U.S. 584, 586 (1941); *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").

A second principle of subject-matter jurisdiction is that the plaintiff bears the burden of establishing his standing to assert his claim. *See Lujan v. Def.'s of Wildlife*, 504 U.S. 555, 560 (1992). Under Article III of the Constitution, the subject-matter jurisdiction of the federal courts is limited to "Cases" and "Controversies." U.S. CONST. art. III, § 2. And "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan*, 504 U.S. at 560. Thus, standing is a "threshold question in every federal case, determining

5

the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005).

To establish standing, a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."[6] *Warth*, 422 U.S. at 499 (citing *Tileston v. Ullman*, 318 U.S. 44 (1943)). "Related to this principle . . . is the so-called shareholder standing rule[—]a longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action . . . ." *Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990). The only exception to this "shareholder-standing doctrine" is that a "shareholder with a direct, personal interest," separate and apart from the corporation's interest, may sue in his own name. *Id.* Even under that exception, however,

---

[6] The doctrine of third-party standing has long been considered an element of what was formerly known as "prudential standing." *See Kowalski v. Tesmer*, 543 U.S. 125, 128–29 (2004). But the Supreme Court has cast grave doubts on the viability of the prudential-standing doctrine—calling the "prudential" label "misleading" and justifying the doctrine's contours on other, non-prudential grounds. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014). While the *Lexmark* Court ultimately upheld the continued vitality of the "zone-of-interests test"—a separate prong of the prudential-standing inquiry—it left "consideration of [the third-party standing] doctrine's proper place in the standing firmament [for] another day." *Id.* at 127 n.3.

Nevertheless, for two reasons, this Court will apply the third-party standing doctrine here. *First*, *Lexmark* did "not present any issue of third-party standing," *id*. As a result, its discussion of the doctrine is nonbinding dicta. *See Roberts v. Louisiana*, 431 U.S. 633, 640 (1977) ("[T]o the extent that [a court] alluded to subsections of the [] law that were not before the Court, those statements are nonbinding dicta."). *Second*, the Eleventh Circuit has cited the third-party standing doctrine approvingly as recently as 2018—four years *after Lexmark*. *See W. Ala. Women's Ctr v. Williamson*, 900 F.3d 1210, 1325 (11th Cir. 2018), *cert. denied sub nom.*, *Harris v. W. Alabama Women's Ctr.*, 139 S. Ct. 2606 (2019). This Court is thus bound to apply the third-party standing test as the governing law of this Circuit. *See Inversiones y Procesadora Tropical INPROTSA, S.A. v. Del Monte Int'l GmbH*, 921 F.3d 1291, 1301 (11th Cir. 2019) (lower courts must follow a prior decision of the Eleventh Circuit even when a Supreme Court opinion weakens that decision); *Tobinick v. Novella*, 884 F.3d 1110, 1118 (11th Cir. 2018) (same).

"diminution in value of the corporate assets is insufficient direct harm to give the shareholder standing to sue in his own right." *Stevens v. Lowder*, 643 F.2d 1078, 1080 (5th Cir. Unit B Apr. 1981).[7]

A motion to dismiss under Rule 12(b)(1) may attack the Court's subject-matter jurisdiction either facially or factually. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). On a facial challenge, the Court must, as with other Rule 12(b) motions, limit its review to the factual allegations in the complaint—accepting well-pled allegations as true. *Id.* A factual attack, on the other hand, challenges "the existence of subject matter jurisdiction in fact" and requires that the Court examine materials outside of the pleadings, such as testimony, declarations, and affidavits, to ensure the proper exercise of its jurisdiction. *Id.* While the Premier Defendants do not specify which kind of challenge—facial or factual—they have levied against the Court's subject-matter jurisdiction, the Court need not delve beyond the four corners of the Complaint to resolve their Motion.

## ANALYSIS

It is by now well-established that shareholders may not sue individually for injuries suffered by their corporations. *See Cook v. Trinity Universal Ins. Co. of Kan.*, 297 F. App'x 911, 913–914 (11th Cir. 2008) ("Generally, status as a corporate shareholder will *not* give an individual standing to prosecute a claim on behalf of a corporation."); *KMS Rest. Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321, 1324 (11th Cir. 2004) ("Any rights created by the letter of intent belonged to [the corporation] . . . . Because [the shareholder] has no rights of his own under the letter of intent or the agreement, he lacks standing to pursue on his own behalf the . . . claim."); *Lowder*, 643 F.2d

---

[7] Decisions of the former Fifth Circuit issued prior to October 1, 1981 are binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

at 1080 ("An action to redress injuries to a corporation cannot be maintained by a shareholder in his own name but must be brought in the name of the corporation.").

This is true even when, as here, the individual plaintiff is the company's sole owner. *See Fla. Seed Co. v. Monsanto Co.*, 105 F.3d 1372, 1375–76 (11th Cir. 1997) ("The only injuries allegedly suffered by Frit are as a shareholder and guarantor. Thus, Frit has suffered no [] injury. Courts uniformly have held that stockholders, *even sole stockholders* such as Frit, lack standing to bring [] suit for injury to their corporations." (emphasis added)); *see also Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 495 (S.D. Fla. 2003) ("Courts have noted in various contexts that a plaintiff may not assert a claim for damages suffered to a corporation, even where such individual plaintiff is the sole shareholder or president of the corporation." (citation omitted)); *accord Grimm v. Borough of Norristown*, 226 F. Supp. 2d 606, 631 (E.D. Pa. 2002) (finding that individual cannot maintain claim on behalf of corporation "even where the plaintiff is the sole shareholder of the corporation, its president, or a key employee" (collecting cases)).

The only exception to this rule is that a "shareholder with a direct, personal interest," separate and apart from that of the corporation, may sue in his own name. *Alcan Aluminium*, 493 U.S. at 336. Even under this exception, however, "diminution in value of the corporate assets is insufficient direct harm to give the shareholder standing to sue in his own right." *Lowder*, 643 F.2d at 1080; *see also Gregory v. Mitchell*, 634 F.2d 199, 202 (5th Cir. Jan. 1981) (finding that the "district court was correct in holding that 'neither officers nor stockholders . . . can maintain an action to redress an injury to the corporation even though the value of their stock is impaired as a result of the injury.'" (citation omitted in original)).

As the Complaint's factual averments make clear, Guillaume's claims are premised on an injury that, if it exists at all—a question the Court does not here decide—was plainly suffered by

8

AFILY8. Indeed, while Guillaume superficially claims that *his* right to contract was violated, *see* Compl. at 8–9, the Complaint alleges that, in fact, it was "Plaintiff's *Company* [that] was granted authorization and his *Company* [that] began entering into Contracts with the Veteran's Administration," Compl. at 6 (emphasis added). And, while Guillaume goes on to argue that, "[a]s a disabled Veteran, [he] has the Statutory right to be the first in line to bid and enter a small business contract . . . pursuant to [the applicable VA statutes]," Compl. at 9, the statute that governs the verification process at issue here, 38 U.S.C. § 8127, deals only with *the entities* those veterans own and states that its goal is "to increase contracting opportunities *for small business concerns* owned by veterans." 38 U.S.C. § 8127(a)(1). It is, therefore, unsurprising that subsection (f) of that statute—the provision AFILY8 cited in its appeal to Judge Hyde—provides that, "[i]f a *small business concern* is not included in the database because the Secretary does not verify the status of *the concern* as a small business concern or the ownership or control of the concern, *the concern may appeal* the denial of verification." *Id.* at (f)(8)(A) (emphasis added).

The statute at issue, then, outlines the process by which a company like AFILY8 can qualify as an SDVOSB, *id.* at (e); gives businesses like *AFILY8* preference in government bids, *id.* at (d); delineates how entities like *AFILY8* make it onto the Vendors List in the first place, *id.* at (f)(4); explains how companies like *AFILY8* remain on that list, *id.* at (f)(2)(A); and describes the process by which businesses like *AFILY8* may appeal their removal from that list, *id.* at (f)(8)(A). In short, if either the VA or the SBA made any mistakes in administering the above procedures, those mistakes caused injury to *AFILY8*—not to Guillaume. Accordingly, Guillaume's attempt to bring this case on AFILY8's behalf fails for lack of standing.

Nevertheless, for the Plaintiff's benefit, this Court will also address the Defendants' sovereign-immunity contentions. Under the doctrine of sovereign immunity, the "United States is

generally immune from suit unless it has expressly waived that immunity by statute." *S. Spanish Trail, LLC*, 2019 WL 3285533, at *3. In the Administrative Procedure Act (the "APA"), the United States waived its sovereign immunity for suits brought by persons "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute." 5 U.S.C. § 702.[8] But the APA waived the Government's sovereign immunity only for claims that seek *injunctive relief*—not for claims (like this one) for money damages. *See id.* And nothing in the APA "confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Id.*

As relevant here, the Tucker Act makes clear that the Court of Federal Claims[9] "shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. . . . before or after the contract is awarded." 28 U.S.C. § 1491(b)(2).[10] In other words, AFILY8 cannot maintain a claim against the United States, its agencies, or its officers if it does not establish a clear statutory waiver of sovereign immunity—either under the APA, the Tucker Act, or some other statute.

---

[8] Under 38 U.S.C. § 8127(f)(8)—the statutory provision at issue here—the "decision of the Office of Hearings and Appeals shall be considered a final agency action."

[9] While the text of the Tucker Act actually says that *federal district courts and* the Court of Federal Claims shall have *concurrent* jurisdiction over such actions, *see* 28 U.S.C. § 1491(b)(2), Congress—as part of the Administrative Dispute Resolution Act of 1996, Pub. L. No. 104–320, § 12(d), 110 Stat. at 3875—passed a sunset provision, which, on January 1, 2001, terminated federal district court jurisdiction over these cases. *See also Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1079 (Fed. Cir. 2001) ("It is clear that Congress's intent in enacting the ADRA with the sunset provision was to vest a single judicial tribunal with exclusive jurisdiction to review government contract protest actions.").

[10] While this Court makes no recommendations about what form any future complaint by the Plaintiff (or his company) should take, these statutes should play a role in the framing of that complaint.

\*\*\*

This suit is being dismissed *without prejudice*. The Plaintiff can thus refile this case at any time. But, if the Plaintiff does choose to refile, he should keep a few things in mind. *First*, as this Order makes clear, an individual may not maintain a suit that is premised on injuries suffered by the corporate entity he owns. Instead, the corporation must bring the suit in its own name. *Second*, a corporation may not appear *pro se*. So, if AFILY8 does intend to bring a future lawsuit, it must retain counsel to represent it in that case. *Third*, AFILY8 cannot maintain a lawsuit against the United States, its agencies, or its officers unless it establishes a clear statutory waiver of sovereign immunity.

Being fully advised, the Court hereby

**ORDERS AND ADJUDGES** as follows:

1. The Defendants' Motion to Dismiss [ECF No. 31] is **GRANTED**. This case is **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.
2. The Clerk of Court shall **REFUND** the Plaintiff's filing fee.
3. The Clerk of Court is directed to **CLOSE** this case. All pending motions are **DENIED AS MOOT**. All pending hearings and deadlines are **TERMINATED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 17th day of June 2020.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record